J-S78030-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| IN RE: ADOPTION OF: A.L.P. (ADOPTEE'S NAME AS ON BIRTH CERTFICATE) | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| APPEAL OF: C.L.P., FATHER | No. 805 WDA 2016 |

Appeal from the Order Entered April 28, 2016
In the Court of Common Pleas of Westmoreland County
Orphans' Court at No(s): 60 of 2015

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| IN RE: ADOPTION OF E.M.P. (ADOPTEE'S NAME AS ON BIRTH CERTIFICATE) | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| APPEAL OF: C.L.P., FATHER | No. 806 WDA 2016 |

Appeal from the Order April 28, 2016
In the Court of Common Pleas of Westmoreland County
Orphans' Court at No(s): 61 of 2015

BEFORE: BENDER, P.J.E., OTT, J., and FITZGERALD, J.[*]

MEMORANDUM BY OTT, J.: **FILED NOVEMBER 03, 2016**

_____

[*] Former Justice specially assigned to the Superior Court.

C.L.P. ("Father") appeals from the orders entered April 29, 2016, in the Court of Common Pleas of Westmoreland County, which involuntarily terminated his parental rights to his minor daughters, E.M.P., born in July of 2012, and A.L.P., born in May of 2013 (collectively, "the Children").[1] After careful review, we affirm.

We summarize the relevant factual and procedural history of this matter as follows. On or about October 20, 2012, Father and Mother brought E.M.P. to the hospital "with complaints of shortness of breath and concerns for a possible apneic spell." Order of Adjudication and Disposition (E.M.P.), 1/28/2013, Findings of Fact at ¶ 2. Upon examination, E.M.P. was found to be in critical condition. *Id.* at ¶ 6. Radiographs and a skeletal survey revealed that E.M.P. was suffering from numerous injuries, including "a fracture of the left parietal bone, with soft-tissue injuries; fractures of ribs 2-9 on the right, and ribs 3-11 on the left, an acute right fracture of the femur, fractures of the right and left radius and ulna, which were beginning to heal, and a subdural hemorrhage." *Id.* at ¶ 16. E.M.P. nearly died from her injuries. *Id.* at ¶ 24.

---

[1] The Children's mother, E.M.F. ("Mother"), executed consent to adoption forms on July 2, 2015. On April 26, 2016, the orphans' court entered orders confirming Mother's consent and terminating her parental rights to the Children. Mother has not filed a brief in connection with this appeal, nor has she filed her own separate appeal.

E.M.P. was adjudicated dependent following a hearing on January 28, 2013, and aggravated circumstances were found as to both parents. Father and Mother were incarcerated that same day, and were charged with inflicting E.M.P.'s injuries. N.T., 4/28/2016, at 17. Father has not had any contact with E.M.P. since January 10, 2013. *Id.* at 20. On December 5, 2014, Father was convicted of aggravated assault, conspiracy, and endangering the welfare of a child, with respect to E.M.P. *Id.* at 12-15, 37-38; Father's criminal docket at 4, 12. Father currently is serving an aggregate sentence of nine to eighteen years' incarceration, which he received on March 19, 2015. N.T., 4/28/2016, at 13-15, 37-38; Father's sentencing order at 1-2. As a condition of his sentence, Father is not permitted to have any contact with E.M.P., and is not permitted to have unsupervised contact with any other minor child. Father's sentencing order at 1.

A.L.P. was born while Father was incarcerated, and was adjudicated dependent by order dated July 18, 2013. N.T., 4/28/2016, at 34; Order of Adjudication and Disposition (A.L.P.), 7/18/2013. Father has never had contact with A.L.P. N.T., 4/28/2016, at 21.

On July 7, 2015, the Westmoreland County Children's Bureau ("WCCB") filed petitions to involuntarily terminate Father's parental rights to the Children. The orphans' court held a termination hearing on April 28,

2016. Following the hearing, on April 29, 2016, the court entered orders terminating Father's parental rights.[2] Father timely filed notices of appeal on May 31, 2016, along with concise statements of errors complained of on appeal.[3]

Father now raises the following issue for our review.

> I. Whether the [orphans'] court erred in terminating [Father's] parental rights to the minor children, [the Children], for the reason that the court's determination that [Father's] parental rights to the said children should be terminated constituted an abuse of discretion?

Father's brief at 6 (unnecessary capitalization omitted).

We consider Father's claim mindful of our well-settled standard of review.

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported

---

[2] The orphans' court did not file a written opinion in this matter. Instead, the court provided a brief summary of its findings at the conclusion of the termination hearing. **See** N.T., 4/28/2016, at 96-102.

[3] Father had thirty days to appeal the termination orders, meaning that his notices of appeal would normally be due by May 29, 2016. **See** Pa.R.A.P. 903(a) ("Except as otherwise prescribed by this rule, the notice of appeal . . . shall be filed within 30 days after the entry of the order from which the appeal is taken."). However, because May 29, 2016, was a Sunday, and because court was closed for Memorial Day on May 30, 2016, Father's notices of appeal were timely filed on May 31, 2016. **See** 1 Pa.C.S.A. § 1908 ("Whenever the last day of any such period shall fall on Saturday or Sunday, or on any day made a legal holiday by the laws of this Commonwealth or of the United States, such day shall be omitted from the computation.").

by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S.A. §§ 2101-2938, which requires a bifurcated analysis.

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

In this case, the orphans' court terminated Father's parental rights to E.M.P. pursuant to Sections 2511(a)(1), (2), (5), (8), (9), and (b). The court terminated Father's parental rights to A.L.P. pursuant to Sections

2511(a)(1), (2), (5), (8), and (b). We need only agree with the orphans' court as to any one subsection of Section 2511(a), as well as Section 2511(b), in order to affirm. *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*), *appeal denied*, 863 A.2d 1141 (Pa. 2004). Here, we analyze the court's decision to terminate under Sections 2511(a)(2) and (b), which provide as follows.

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> ***
>
> > (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> ***
>
> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(2), (b).

We first address whether the orphans' court abused its discretion by terminating Father's parental rights pursuant to Section 2511(a)(2).

> In order to terminate parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003) (citation omitted)). "The grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." *In re A.L.D.*, 797 A.2d 326, 337 (Pa. Super. 2002) (citations omitted). "[A] parent's incarceration is relevant to the section (a)(2) analysis and, depending on the circumstances of the case, it may be dispositive of a parent's ability to provide the 'essential parental care, control or subsistence' that the section contemplates." *In re A.D.*, 93 A.3d 888, 897 (Pa. Super. 2014) (discussing *In re Adoption of S.P.*, 47 A.3d 817 (Pa. 2012)).

Instantly, Father argues that WCCB failed to prove that his parental rights should be terminated by clear and convincing evidence. Father's brief at 15-16. While Father acknowledges that he was convicted of assaulting E.M.P. and is serving a lengthy prison sentence, Father insists that he is

innocent and has appealed his conviction to the Superior Court. *Id.* In addition, Father contends that he completed all of the services that he is capable of completing while incarcerated. *Id.* at 16.

After a thorough review of the record in this matter, we conclude that the orphans' court did not abuse its discretion by involuntarily terminating Father's parental rights to E.M.P. As discussed above, Father was convicted of inflicting serious injuries on E.M.P. in October of 2012, specifically, aggravated assault and endangering the welfare of a child, and is currently serving an aggregate sentence of nine to eighteen years' incarceration. As a condition of his sentence, Father is not permitted to have any contact with E.M.P. Given Father's abuse, and his lengthy resulting prison sentence, there is clear and convicing evidence that he is incapable of being a parent to E.M.P. Moreover, Father will not be able to remedy his parental incapacity.[4]

The record equally supports the decision of the orphans' court to terminate Father's parental rights to A.L.P. A.L.P. has never met Father and has no relationship with him. By the time Father completes his minimum sentence in January of 2022, A.L.P. will be nearly nine years old. Even

---

[4] While Father contends that he is innocent, and that he has appealed his conviction to the Superior Court, this argument merits no relief. Our Court recently affirmed Father's judgment of sentence in an unpublished memorandum. In order to protect the Children's identity, we do not include a citation to the memorandum affirming Father's judgment of sentence in the instant decision.

assuming that Father is paroled at that time, he will be permitted to have only supervised visits with A.L.P. as a condition of his sentence. Father simply is not capable of caring for A.L.P., and her life should not be put on hold any longer. As this Court has stated, "a child's life cannot be held in abeyance while a parent attempts to attain the maturity necessary to assume parenting responsibilities. The court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future." *In re Adoption of R.J.S.*, 901 A.2d 502, 513 (Pa. Super. 2006).

We next consider whether the orphans' court abused its discretion by terminating Father's parental rights pursuant to Section 2511(b). We have discussed our analysis under Section 2511(b) as follows.

> Section 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. As this Court has explained, Section 2511(b) does not explicitly require a bonding analysis and the term 'bond' is not defined in the Adoption Act. Case law, however, provides that analysis of the emotional bond, if any, between parent and child is a factor to be considered as part of our analysis. While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.
>
> > [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, this Court stated that the trial court should consider the importance of continuity of relationships and whether

- 9 -

> any existing parent-child bond can be severed without detrimental effects on the child.

*In re Adoption of C.D.R.*, 111 A.3d 1212, 1219 (Pa. Super. 2015) (quoting *In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011)) (quotation marks and citations omitted).

Here, Father argues that the orphans' court abused its discretion because it "failed to give adequate consideration to the effect that the proposed termination would have on the minor children's needs and welfare." Father's brief at 16-17. Father emphasizes that WCCB did not present "testimony of a licensed psychologist of other sufficient evidence" when addressing this issue. *Id.* at 18.

We again conclude that the orphans' court did not abuse its discretion. The record reveals that Father has not had any contact with E.M.P. since he was incarcerated in January of 2013, and that Father has never had contact with A.L.P. Thus, it is beyond cavil that the Children do not have a bond with Father. *See In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa. Super. 2008) ("In cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists."). Further, while Father suggests that WCCB should have presented the testimony of a psychologist, it is well-settled that a court in a termination proceeding "is not required by statute or precedent to order a formal bonding evaluation be performed by an expert." *In re K.K.R.-S.*, 958 A.2d 529, 534 (Pa. Super. 2008) (citation omitted).

Accordingly, because we conclude that the orphans' court did not abuse its discretion by involuntarily terminating Father's parental rights to the Children, we affirm the orders of the orphans' court.

Orders affirmed.


Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date:  11/3/2016